UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAURE Z. NELSON,<br><br>Petitioner,<br><br>vs.<br><br>J. MACDONALD,<br><br>Respondent. | No. 2:16-cv-0984-KJM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on November 19, 2013 in the Sacramento County Superior Court on charges of carjacking with a firearm enhancement. He seeks federal habeas relief on the following grounds: (1) the trial court misunderstood the scope of its authority under the California constitution insofar as it failed to consider factors other than the nature of the offense in determining whether to strike petitioner's firearm enhancement; (2) the firearm enhancement violates petitioner's rights under the California constitution because it is grossly disproportionate to both the nature of his offense and his nature as an offender; and (3) his trial counsel rendered ineffective assistance by failing to object to the factors the trial court considered in rejecting his request to strike the firearm enhancement. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

1

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual and procedural summary:

> **The Crime**
>
> On July 7, 2013, defendant was the registered owner of a 2001 Lincoln Navigator sport utility vehicle (SUV). As of that date, Lobel Financial, the SUV's legal owner, had sent multiple payment past due notices to defendant. It assigned repossession of the vehicle to Hook and Book Recovery.
>
> Around 8:00 p.m., Jeremy Monks, a repossession agent for Hook and Book Recovery, went to defendant's home to repossess the Navigator. Monks's cousin Brandon Meyer went along as a lookout and assistant. The Navigator was in the driveway and Monks picked it up with his tow truck. As Monks and Meyer started to put nylon ratchet straps on the rear wheels, defendant jumped over a fence and approached them.
>
> Defendant was agitated and "freaked out" and asked "what the hell was going on." Monks said they were repossessing his Navigator and told defendant he could retrieve his belongings from the vehicle if he gave up the keys. Defendant said he needed some things out of the Navigator and questioned whether Monks was a legitimate repossession agent.
>
> Monks got the repossession paperwork from his truck and showed it to defendant, who snatched it from him. Defendant said he paid the bill; Monks and Meyer replied they had to take the Navigator, but offered to give defendant a card that would allow him to pay off the debt and regain the vehicle.
>
> Defendant's behavior then "went south." He told Monks and Meyer that they were not going to take his car. He "started getting kind of violent," started swearing, and threatened to shoot Monks and Meyer. Defendant's wife or girlfriend came out of the house and stood on the patio. Defendant told her to "get the gun," and that he would kill Monks and Meyer before they took the Navigator. Monks and Meyer tried to calm defendant down, but he did not seem to care and kept telling the woman to "grab the gun."
>
> Defendant went into the house to get his keys. When defendant returned, Monks asked for the keys. Defendant pulled a semiautomatic pistol out of his pocket and said that they were not going to take his vehicle. Monks undid the straps, lowered the Navigator, and quickly left with Meyer. He called his supervisor, who told him to call the police.

2

Defendant made a full monthly payment on the Navigator on July 10, 2013. Lobel Financial accepted payment and canceled the repossession. Defendant was stopped while driving the Navigator and arrested on July 18, 2013. The Hook and Book recovery paperwork and a receipt from Lobel Financial for the July 10, 2013, payment were inside the vehicle.

**Motion to Strike the Enhancement**

Defendant filed a motion to strike the section 12022.53 gun enhancement as a violation of the state and federal prohibitions against cruel and/or unusual punishment. He argued that recent changes in other laws reducing the punishments for various crimes created a new context for considering his claim. He also argued that the facts of his case were "substantially less egregious than those of the 'standard' carjacking." The motion pointed out that the Navigator was very important to defendant, who needed it to transport his son, who had a leg amputated due to cancer, to medical appointments. Defendant claimed his minimal criminal record, a 32 year old with no felony convictions, further supported a finding that imposing the enhancement was a disproportionate punishment. He additionally noted that incarceration will gravely affect his girlfriend and the four children he supports as the sole breadwinner. Finally, the manner in which defendant conducted his life, avoiding gangs while growing up in the Oak Park neighborhood, finishing high school and attending two years of college, and owning and operating his own business, shows that the incident leading to his conviction was out of character for his personality.

At the hearing on the motion, defense counsel reiterated the contentions regarding changes to the law, the mitigated facts of the crime, and defendant's lack of a significant record. The trial court told counsel "that your argument really goes to the nature of the Penal Code section 215 violation, which is—this is not your typical, if you will, carjacking." Noting that the gun enhancement applied to "a whole plethora of offenses—and it doesn't really matter whether it's carjacking or robbery or some similar offense," the court asked what about the nature of the offense "mitigates against applying the [section] 12022.53[, subdivision] (b) uniformly?" Counsel replied that this was not a standard carjacking and the firearm here was used in a "de minimis way." The court replied this was the type of situation section 12022.53 was intended to prevent, a person in an emotionally charged situation using a firearm to commit an offense.

The court asked the prosecutor for his opinion on the facts of defendant's crime. The prosecutor argued that while this was not a standard carjacking, that did not matter to the victims. Monks quit his job after the incident and Meyer no longer worked in repossession. Therefore, the fact that defendant had an ownership interest in the vehicle was irrelevant. Also, the recent changes to the law reducing punishment were enacted through legislation or the initiative process rather than judicially. The defense

3

replied to this last point by referring to recent decisions reducing punishment in certain situations.

The trial court then stated: "Well, I have considered the authorities that have been cited. I've done some research on my own. I really don't believe the lack of any significant criminal record provides any basis for modifying the sentence to avoid an imposition of the sanction under [section] 12022.53[, subdivision] (b). [¶] I think the only thing that's really pertinent here to that consideration, based on the authorities that I've referred to, is the nature of the offense itself." Continuing, the court asked the prosecutor whether justice would not be served if it granted defendant's request and imposed a five-year enhancement under section 12022.5 rather than the 10–year section 12022.53 enhancement.

The prosecutor argued there was nothing mitigating about defendant's offense. Asked for additional comment, defense counsel said if someone had come up to defendant's home, knocked on the door, and said he had slept with defendant's girlfriend, defendant could receive a lesser sentence for shooting that man than what he would today if the court did not grant the motion.

The trial court then denied defendant's motion, finding "the conduct involving the use of a firearm in this case is exactly what was intended to be proscribed by the effects of that statute and I do not see any good cause based upon the overall conduct in this case to depart from imposing the penalties under [section] 12022.53[, subdivision] (b)."

*People v. Nelson*, 2015 WL 3380980, at *1–3 (Cal.App. 3 Dist., 2015) (unpublished).

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v.*

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption

may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

/////

### III. Petitioner's Claims

#### A. The Scope of the Trial Court's Authority

Petitioner argues that the trial court misconstrued the scope of its authority to strike his firearm enhancement as violative of the California constitution's ban on cruel and unusual punishment. ECF No. 14 at 4-5.[2] Specifically, petitioner argues that the trial court erroneously declared that, in considering his motion to strike, it could only consider the nature of the offense. Lodg. Doc. No. 5 (Appellant's Opening Brief) at 14-15.[3] On appeal, he argued that the trial court's misunderstanding of its authority militated in favor of remanding for a new sentencing hearing. *Id*. at 15. The court of appeal considered this claim and rejected it as procedurally barred, reasoning:

> Defendant contends the trial court did not understand its authority to strike his punishment as cruel or unusual under the California Constitution. He claims the court's statements at the hearing on his motion show a belief that it could not consider factors like defendant's lack of a prior record, and that the court limited its consideration to the nature of his current offense. Defendant asks us to reverse the denial of his motion to strike the enhancement and remand for a new hearing.
>
> Defendant's contention is based on two statements from the trial court, the trial court's statement: "Well, I have considered the authorities that have been cited. I've done research on my own. I really don't believe the lack of any significant criminal record provides any basis for modifying the sentence to avoid an imposition of the sanction under [section] 12022.53[, subdivision] (b). [¶] I think the only thing that's really pertinent here to that consideration, based on the authorities that I've referred to, is the nature of the offense itself," and its statement denying his motion: "the conduct involving the use of a firearm in this case is exactly what was intended to be proscribed by the effects of that statute and I do not see any good cause based upon the overall conduct in this case to depart from imposing the penalties under [section] 12022.53[, subdivision] (b)." Defendant claims these statements show the trial court thought it could not consider his lack of a significant prior record and denied the motion based solely on the nature of the current offense.

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3] Petitioner refers the court to the brief submitted to the state court of appeal by his appellate counsel. ECF No. 14 at 4. Accordingly, the court also looks to that document in determining the contours of this claim.

> We disagree. The judge obviously considered the facts of the case in considering whether to impose the enhancements.
>
> The nature of the current offense is not the only relevant consideration to determining whether a punishment is unconstitutionally cruel or unusual. Other factors to be considered include the nature of the offense and the offender, the penalty imposed for more serious crimes, and the penalty imposed for the same offense in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 425–427 (*Lynch* ).) If the trial court thought it could not consider valid factors like defendant's prior record, then a remand for resentencing would be appropriate.
>
> In any event defendant did not raise an objection to the trial court on this ground, which forfeits the contention on appeal. (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247–1248.) Defendant claims trial counsel's failure to raise an objection constitutes ineffective assistance and asks us to ignore the forfeiture and consider on the merits the alleged failure to consider his lack of significant criminal record.
>
> "To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' [Citation.]" (*People v. Hart* (1999) 20 Cal.4th 546, 623.) As we shall discuss in part II, post, the 10–year enhancement did not violate the proscription against cruel or unusual punishment. Since the question whether a punishment is cruel or unusual is reviewed de novo as a question of law (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358), defendant could not prevail on his motion if the trial court did in fact consider all relevant factors. Therefore, he was not prejudiced by any alleged refusal to consider his lack of a serious prior criminal record. Since trial counsel was not ineffective, we decline to consider the forfeited contention.

*Nelson*, 2015 WL 3380980, at *3-4. Petitioner did not include this claim in his petition for review submitted to the California Supreme Court. Lodg. Doc. No. 9 (Petition for Review). That petition presented only one issue – whether petitioner's ten year firearm enhancement actually violated the California constitution's ban on cruel and unusual punishment. *Id*. at 2.

### 1. **Applicable Legal Standards**

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Wilson*, 562 U.S. 1 at 5 (quoting *Estelle*, 502 U.S. at 67). Additionally, a petitioner may not transform a state law claim into a federal one merely by reframing it as a "due process" violation. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

9

## 2. **Analysis**

As a preliminary matter, this claim was not presented to the California Supreme Court and is, therefore, unexhausted. Additionally, the court of appeal determined that it was procedurally defaulted because petitioner's trial counsel did not raise a pertinent objection before the trial court. Respondent emphasizes both of these failings and contends that it is, therefore, unnecessary to reach the claim's merits. ECF No. 25 at 12. The court finds, however, that dismissal on the merits would be most expedient. 28 U.S.C. § 2254(b)(2) (An application for a writ of habeas corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); s*ee also Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable"); *Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits."). This claim does not present any cognizable grounds for federal relief. Instead, it presents only a single question of state law: whether the trial court misconstrued the scope of its authority under California law when it failed to consider factors other than the nature of petitioner's offense in deciding whether to strike his firearms enhancement. Even assuming the trial court erred in this respect, federal habeas relief is not available for errors of state law and this claim should be dismissed on this basis. *See Estelle*, 502 U.S. at 67.

### B. The Validity of Petitioner's Firearm Enhancement

Petitioner's appellate brief also argues that the imposition of a ten year firearm sentencing enhancement was grossly disproportionate to his offense and therefore violative of the California constitution's ban on cruel and unusual punishment. Lodged Document Number Five: Appellant's Opening Brief at 29. The amended petition filed with this court also references this claim. ECF No. 14 at 4. The court of appeal considered this claim and rejected it:

/////

/////

Under section 12022.53, subdivision (b) a defendant who personally uses a firearm when committing one of a certain number of specific felonies, is subject to a 10–year enhancement. Carjacking is one of the felonies subject to this enhancement. (§ 12022.53, subd. (a)(5).) Defendant contends that imposing this enhancement on him is so disproportionate as to violate the California Constitution's proscription against cruel or unusual punishment. We disagree.

The California Constitution prohibits "Cruel or unusual punishment." (Cal. Const., art. I, § 17.) We construe this provision separately from its counterpart in the federal Constitution. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 355.)

"[I]n California a punishment may violate [California Constitution, article I, section 17] if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch*, supra, 8 Cal.3d at p. 424, fn. omitted.) To assess disproportionality, we (1) examine the nature of the offense and the offender, (2) compare the sentence with punishments for more serious offenses in the same jurisdiction, and (3) compare the sentence with punishments for the same offense in other jurisdictions. (*Id*. at pp. 425–427.)

"In examining 'the nature of the offense and the offender,' we must consider not only the offense as defined by the Legislature but also 'the facts of the crime in question' (including its motive, its manner of commission, the extent of the defendant's involvement, and the consequences of his acts); we must also consider the defendant's individual culpability in light of his age, prior criminality, personal characteristics, and state of mind. [Citations.]" (*People v. Crooks* (1997) 55 Cal.App.4th 797, 806.)

Defendant relies on only the first technique listed in *Lynch*, the nature of the offense and offender. He claims his offense is not a standard carjacking, as the crime was not planned, and was not "motivated by greed, criminality, or gang-related conduct." According to defendant, this case is unlike the standard carjacking, "in which a perpetrator arms himself and goes out to take someone else's vehicle." He further asserts that he thought he had paid his bill before the attempted repossession, and that losing the Navigator would have devastating consequences on his family, as it was used to take his cancer-stricken son to medical appointments. Defendant also argues that the manner in which he used the gun further supports a finding of disproportionality, as it was not used as a first resort, he did not fire the weapon or point it directly at the victims, and the victims were not particularly vulnerable. In light of defendant's personal characteristics, his education, employment history, and lack of a personal record, defendant concludes that imposing the enhancement was grossly disproportionate and therefore violated the California Constitution.

11

> Defendant may be correct that this is not a standard carjacking because it was committed against repossession agents rather than the owner and driver of a motor vehicle. It was nonetheless a violent felony in which defendant's use of a firearm was integral to completing the crime. Defendant does not contend that Monks and Meyer did not have a right to repossess his vehicle. His attempts to stop them from repossessing his Navigator were unsuccessful until he committed the enhancement by personally using a firearm. Defendant did not use the gun on mere impulse; he twice asked his girlfriend to retrieve it. He also threatened to shoot Monks and Meyer before he got the weapon.
>
> We agree with the trial court that defendant's actions are those that the Legislature sought to deter when it enacted the enhancement in question. In addition to allowing defendant to complete a carjacking, his personal use of a firearm imposed substantial harm to his victims. Monks quit his job after his encounter with defendant. He did so because he did not want to put himself in "that situation" again. Meyer also refused to work in repossession after defendant's carjacking. Like Monks, he did not want to put himself "in that situation again." Notwithstanding his arguments to the contrary, defendant's use of a firearm here was not mitigated but well within the norm of culpability contemplated in the section 12022.53, subdivision (b) enhancement.
>
> Defendant's personal characteristics do not support a different result. He was 32 years old at the time of the crime, so his culpability is not mitigated by youth. Although his criminal record is not significant, "[t]he lack of a criminal record is not determinative in a cruel or unusual punishment analysis. [Citations.]" (*People v. Felix* (2003) 108 Cal.App.4th 994, 1001.) While defendant supported himself and his family, this cannot insulate him from the gun-use enhancement.
>
> It is not grossly disproportionate to impose a 10–year enhancement on a defendant for personally using a firearm after threatening to shoot his victims, and where his doing so places them in such fear that they quit working in the car repossession field. The trial court did not err when it denied his motion to strike the enhancement.

*Nelson*, 2015 WL 3380980, at *4–5. Petitioner included this claim in his petition to the California Supreme Court. Lodg. Doc. No. 9 (Petition for Review) at 2. That petition was summarily denied. Lodg. Doc. No. 10 (Order Denying Review).

### 1. Applicable Legal Standards

A criminal sentence that is disproportionate to the conviction offense may violate the Eighth Amendment. *See Graham v. Florida*, 560 U.S. 48, 59 (2010). The Eighth Amendment "does not require strict proportionality between crime and sentence," however, and "forbids only

extreme sentences that are grossly disproportionate to the crime." *Id.* Successful challenges to the proportionality of non-capital sentences will be "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-290 (1983); *see also Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012) ("Circumstances satisfying the gross disproportionality principle are rare and extreme, and constitutional violations on that ground are only for the extraordinary case.") (internal quotations and citations omitted).

In determining whether a non-capital sentence is grossly disproportionate, a reviewing court must weigh "objective factors." *Solem*, 463 U.S. at 290. These include: (1) the gravity of the offense and harshness of the penalty; (2) sentences imposed on other criminals in the same jurisdiction; and (3) sentences imposed for the same offense in other jurisdictions. *Id.*

### 2. **Analysis**

The court notes that the appellate brief referred to by petitioner invokes only the California constitution in arguing that his enhancement was cruel and unusual. Nor does his petition make any specific reference to federal law with respect to this claim. As noted above, no federal habeas relief may issue for a violation that is grounded exclusively in state law. *See Estelle*, 502 U.S. at 67. Moreover, the state court of appeal has already determined that petitioner's enhancement did not violate the California constitution's ban on cruel and unusual punishment, and this court accepts a state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As such, the court will liberally construe this claim as a violation of the Eighth Amendment and consider it only on that basis.

The court finds that, viewed in an Eighth Amendment context, petitioner's ten year firearm enhancement is not grossly disproportionate to his conviction. His sentence was specifically prescribed by California statute[4] and, as a general matter, a "punishment within

---

[4] As the state court of appeal noted, section 12022.53 of the California Penal Code holds that a defendant who personally uses a firearm when committing a carjacking is subject to a ten year enhancement. *See* Cal. Penal Code § 12022.53, subd. (a)(5) – (b).

13

legislatively mandated guidelines is presumptively valid." *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998); *see also United States v. Zavala-Serra*, 853 F.2d 1512, 1518 (9th Cir. 1988) ("Generally, as long as the sentence imposed upon the defendant does not exceed statutory limits, we will not overturn it on eighth amendment grounds."). Additionally, proportionality challenges to sentences harsher than the one received by petitioner have been rejected. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (upholding mandatory sentence of life without parole for possession of more than 650 grams of cocaine); *Hutto v. Davis*, 454 U.S. 370, 371-75 (upholding a forty year sentence for possession of less than nine ounces of marijuana). This claim should be denied.

### C. Ineffective Assistance of Trial Counsel

Next, petitioner claims that his trial counsel was ineffective in failing to object to the trial court's declaration that it could only consider the nature of the offense in weighing his motion to strike the firearm enhancement. ECF No. 14 at 4. He raised this claim on appeal as an argument to be considered in the alternative if the court of appeal found that trial counsel's failure to object raised a procedural bar to his first claim. Lodg. Doc. No. 5 at 21. The amended petition filed with this court also references this claim. ECF No. 14 at 4. The court of appeal briefly addressed and rejected the claim:

> To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice.' [Citation.]" (*People v. Hart* (1999) 20 Cal.4th 546, 623.) As we shall discuss in part II, post, the 10–year enhancement did not violate the proscription against cruel or unusual punishment. Since the question whether a punishment is cruel or unusual is reviewed de novo as a question of law (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358), defendant could not prevail on his motion if the trial court did in fact consider all relevant factors. Therefore, he was not prejudiced by any alleged refusal to consider his lack of a serious prior criminal record. Since trial counsel was not ineffective, we decline to consider the forfeited contention.

*Nelson*, 2015 WL 3380980, at *4. This claim was not presented to the California Supreme Court.

/////

/////

### 1. **Applicable Legal Standards**

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id*. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id*. at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

"The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Thus, in federal habeas proceedings involving "claims of ineffective assistance of counsel, . . . AEDPA review must be """doubly deferential"""" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, U.S. , , 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (quoting *Burt v. Titlow*, 571 U.S. , , 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013)). As the Ninth Circuit has recently acknowledged, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting *Richter*, 562 U.S. at 105). *See also Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.") (quoting *Richter*, 562 U.S. at 101).

## 2. <u>Analysis</u>

The court will dispose of this unexhausted claim on its merits. 28 U.S.C. § 2254(b)(2). The court of appeal determined that petitioner's firearm enhancement did not violate the California constitution after a *de novo* review. In light of that determination, petitioner cannot carry his burden of establishing that his trial counsel's failure to object prejudiced him in any way.

### D. Sufficiency of the Evidence

In a late filed traverse (ECF No. 29) petitioner argues for the first time that the evidence at trial was insufficient to convict him of both carjacking and the firearm enhancement. *Id*. at 3. A traverse is not the proper pleading in which to raise additional grounds for relief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Regardless, this claim is without merit. Petitioner argues that the disparity between the testimony of witnesses Monks and Meyers as to the use of a firearm warrants reversal of the enhancement. ECF No. 29 at 3-4. There is sufficient evidence to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner cannot show, as he must, that no rational trier of fact could have reached the conviction he now challenges. The mere fact that the testimony of certain witnesses did not align does not warrant reversal. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Here, the jury weighed the evidence and concluded that the firearm enhancement was warranted. The fact that the evidence, weighed differently, could have led a trier of fact to reject the enhancement is immaterial. *See United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991) ("The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.").

/////
/////
/////

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 15, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE